CASH *v.* THE HOME INSURANCE COMPANY OF NEW YORK.

4-5364                125 S. W. 2d 99

Opinion delivered February 6, 1939.

*P. L. Smith,* for appellant.

*Verne McMillen, O. A. Featherston* and *James I. Teague,* for appellee.

HOLT, J. Appellant brings this appeal from an adverse decision of the Pike circuit court, sitting as a jury, on his claim for $279.25 growing out of an automobile fire insurance contract with appellee.

The material parts of appellant's complaint are: "The plaintiff states, that a policy of insurance was issued against his Ford truck, serial and motor number 18900275, October 3, 1936, and a premium paid by the said plaintiff for one year against loss by fire and other mishaps. That, on February 11, 1937, the said truck was almost completely destroyed by fire. That, plaintiff demanded, of the defendant $280.00, the interest he claimed to have in said truck, and threatened to file suit unless the said amount was paid. That, on or about August 25, 1937, the plaintiff and defendant comprised the said claim, and

defendant agreed to pay appellant $279.25. That defendant has failed to settle the said amount as agreed."

To this complaint, appellee made general denial and in addition set up as a defense that: "This cause of action is founded upon a certain insurance policy issued October 3, 1936, for one year, and that in accordance with its terms a loss and damage agreement in the sum of $279.25 was signed by the plaintiff, R. W. Cash, with this defendant. That under the terms and conditions of the policy, the defendant delivered to the Universal Credit Company this sum of money in full payment of the loss and damage under this policy. That the terms of the loss payable clause in said policy is as follows: 'Loss, if any, to be adjusted with the purchaser, assured, though to be paid, subject to all the conditions of this insurance, only to the Universal Credit Company for the account of all interests'."

The record reflects that appellant, R. W. Cash, purchased a Ford truck from the Nashville Motor Company on October 3, 1936, upon a monthly payment plan, financed by the Universal Credit Company, $200.00 cash was paid on the purchase price of $680.00 and a note in the sum of $480.00, to be paid in twelve monthly installments of $40.00 each, was given by appellant. The truck was partly destroyed by fire on February 11, 1937, and at that time two payments had been made and there was a balance then due on the note of $400.00. At the time the truck was purchased, it was insured with appellee, Home Insurance Company, in the amount of $480.00, any fire loss to be paid to the Universal Credit Company, which was the purchaser of the note in question. The insurance policy provides: "Loss, if any, to be adjusted with the purchaser, assured, though to be paid, subject to all the conditions of this insurance, only to the Universal Credit Company, for the account of all interests." The record further discloses that the Universal Credit Company, about six months after the fire and when the truck seemed to have been abandoned by appellant, took charge of it and delivered it to the Nashville Motor Company, which paid them $125.00 for it. This sum of

$125.00, the Universal Credit Company applied on the note of appellant, Cash, and about the same time appellee paid the Universal Credit Company $275.00 additional, and sometime later $4.25 to appellant, which paid in full the balance of $400.00 due the credit company on the note in question and a balance over of $4.25 to Cash.

After the damage to the truck by fire, appellant proceeded in an attempt to make settlement of his loss with appellee, Insurance Company. In the process of the attempted settlement, certain letters passed between the parties, which we deem it unnecessary to abstract here. This correspondence, however, resulted in a loss and damage agreement being entered into and signed by the parties to this litigation and is as follows: "Loss and/or Damage Agreement. The undersigned hereby expressly agrees that the total net loss and/or damage occurring on or about the 11th day of February, 1937, and for which claim is made, as set forth in the undersigned's signed Statement of Loss, dated August 30, 1937, to automobile covered by the above policy is $279.-25. The sole purpose of this instrument is to fix and evidence the total amount for which claim is made. This instrument is, and is intended to be, binding as to the total amount of loss and/or damage said to have occurred. This instrument is not an acceptance of liability by the Company, does not commit the Company to payment of said claim and does not in any sense waive any of the conditions or provisions of the policy of said Company. Furthermore, upon, in the event, and in consideration of the payment of the above amount by Home Insurance Company, the undersigned hereby releases and discharges Home Insurance Company from any and all liability under its policy for said loss and/or damage, and the undersigned further agrees to hold Home Insurance Company, its successors or assigns, free and harmless from further claim for the loss described. Furthermore, upon, in the event, and in consideration of the payment of the above amount by Home Insurance Company, th undersigned hereby subrogates the said Company to all rights and causes of action that said undersigned has

against any person, persons, or Company whomsoever for damages arising to said automobile, and the undersigned agrees to execute any document required by said Company in the prosecution of said rights, and the company is hereby authorized and empowered to sue, compromise or settle in the undersigned's name or otherwise. In testimony whereof the undersigned has hereunto executed this instrument and set his hand and seal this 18 day of September, 1937. R. W. Cash, Assured, Antoine, Ark., Witnesses: Guy D. Babcock, Antoine, Ark., Mrs. W. H. Holt, Antoine, Ark. Examined and approved. J. P. M.''

The trial court made the following findings of fact and conclusions of law: ''On October 3, 1936, the defendant, Home Insurance Company of N. Y., issued to plaintiff its policy of insurance covering loss by fire to a 1935 model Ford truck for a period of one year. When this policy was issued the Universal Credit Company held a lien against the truck in the sum of $480.00, and the policy provided that any loss thereunder should be adjusted with the plaintiff though payable only to the Universal Credit Company, and liability under the policy was limited to $480.00, the amount of the lien held by the Universal Credit Company. On February 11, 1937, the truck was almost completely destroyed by fire. Defendant waived filing of proof of loss and an adjuster representing defendant was unable to locate plaintiff for some time. On July 6, 1937, $275.00 was paid to the Universal Credit Company by the defendant on said loss, and on October 5, 1937, an additional $4.25 was paid the Universal Credit Company. Plaintiff, through his attorney, wrote defendant in July and August, 1937, demanding $280.00 be paid him above the indebtedness due the Universal Credit Company, and the defendant, through its adjuster, agreed to pay $279.25 under the policy. In pursuance of this agreement the plaintiff on September 18, 1937, executed a loss and damage agreement wherein he agreed that the total net loss or damage to the truck amounted to $279.25. Thereafter, on October 5, 1937, defendant paid the $4.25 balance al-

ready referred to under this agreement. At this time and at the time of the fire plaintiff was still indebted to the Universal Credit Company in the sum of $400.00. In March, 1938, plaintiff brought this suit and contends that the offer to settle made by him in July and August, 1937, amounted to a compromise of a disputed claim and that defendant accepted the offer to pay him $279.25 exclusive of the interest of the Universal Credit Company, and, having accepted his offer, are bound by it even though there might be no merit to such claim. I cannot concur in this contention. While it is true that $275.00 was paid to the Universal Credit Company on the loss before any adjustment was made with the plaintiff, the offer to settle made by plaintiff must be viewed in the light of the provisions of the policy and the loss and damage agreement which was executed by plaintiff on September 18, 1937, after the alleged offer to compromise had been made. Under the terms of the policy the loss was payable only to the Universal Credit Company and was limited to $480.00, the amount of their lien. Under the loss and damage agreement executed by plaintiff, he agreed that the total net loss or damage to the truck was $279.25. This amount has been paid to the Universal Credit Company at a time when the plaintiff was still indebted to them in the sum of $400.00. It, therefore, appears that the liability of defendant under the policy has been fully determined without dispute, having been agreed to by the plaintiff and paid to the party entitled to receive it. Judgment will be entered for the defendant and the complaint of plaintiff will be dismissed."

Appellant very earnestly insists that the judgment of the trial court is contrary to the law and the evidence in this case. To this contention, we cannot agree. We think that the insurance company, appellee, had the right, under its insurance contract with appellant, to make settlement with the Universal Credit Company, holder of the note, as its interest appeared. This court has many times held that a mortgagee under a mortgage clause in an insurance policy, has a vested interest, and in *In-*

*surance Underwriters' Agency* v. *Pride,* 173 Ark. 1016, 294 S. W. 19, said: "We think a mortgagee or lienholder acquires a vested and enforceable right under an ordinary loss-payable clause as his interest may appear in an insurance policy which cannot be destroyed by a settlement or adjustment between the insurer and the insured."

We also hold that the loss and damage agreement entered into by the appellant and the appellee in this case is clear and unambiguous in its terms, is binding on the parties, and is a complete settlement of any and all rights of appellant growing out of the insurance contract with appellee in this case. This agreement clearly recites that the total net loss and damage is $279.25 and further states, "This instrument is, and is intended to be, binding as to the total amount of loss and damage said to have occurred."

We, therefore, conclude that the judgment of the trial court, sitting as a jury, and to which we must give the same force and effect that we would to a jury's verdict, is supported by substantial evidence and should not be disturbed. Accordingly, the judgment is affirmed.